1

2

3

4

5                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
6                              AT SEATTLE

7   THOMAS J. WEST, III,                     )
                                             )
8                    Plaintiff,              )     CASE NO. C05-1711-RSL-MJB
                                             )
9           v.                               )     REPORT AND
                                             )     RECOMMENDATION
10  JO ANNE B. BARNHART,                     )
    Commissioner of Social Security,         )
11                                           )
                     Defendant.              )
12  _____)

13          Plaintiff Thomas J. West, III appeals to the District Court from a final decision of the

14  Commissioner of the Social Security Administration (the "Commissioner") denying his

15  application for Supplemental Security Income ("SSI") under Title XVI of the Social Security

16  Act.  For the reasons set forth below, it is recommended that the Commissioner's decision be

17  REVERSED and REMANDED for payment of benefits..

18                             I.  PROCEDURAL HISTORY

19          Plaintiff filed an application for SSI in October of 2000 (Tr. 56-62), claiming he was

20  disabled beginning January 1, 1995, due to chronic hepatitis, asthma, fatigue, edema, and pain in

21  his lower back and abdomen. (Tr. 60, 80, 116).  Plaintiff subsequently amended his disability

22  onset date to October 16, 2000, because he is ineligible for SSI benefits up to and including

23  October of 2000.  *See* 20 C.F.R. §§ 416.330, 416.335.  Plaintiff's application was denied initially

24  (Tr. 26-29) and on reconsideration (Tr. 32-34), after which he requested a hearing with an

25

26  REPORT AND RECOMMENDATION
    PAGE - 1

1   Administrative Law Judge (ALJ).  Plaintiff testified and was represented by counsel at a July 9,

2   2002 hearing before ALJ Batisse.  (Tr. 442-489).  Vocational expert ("VE") Paul Tomita also

3   testified.  (Tr. 476-88).  The ALJ issued his decision finding Plaintiff not disabled on September

4   11, 2002.  (Tr. 13-23).  The Appeals Council declined to review the ALJ's decision on March 8,

5   2004 (Tr. 7-9), and Plaintiff filed a complaint for judicial review with this court on March 17,

6   2004.  (C04-0569-JLR).  This Court remanded the case for a de novo hearing on September 16,

7   2004, instructing the ALJ to re-evaluate medical evidence, Plaintiff's credibility and residual

8   functioning capacity ("RFC"), and all new evidence, and to obtain additional VE testimony.  (Tr.

9   514-16).  The Appeals Council remanded the case consistent with this Court's order (Tr. 517-

10  21), and instructed that Plaintiff's October 2000 SSI application be consolidated with a second

11  application he filed in October of 2002 (Tr. 521, 574-76).

12          On July 13, 2005, Plaintiff had a second hearing before ALJ Batisse, which included

13  testimony from Plaintiff, a medical expert (ME), and a VE.  (Tr. 1027-77).  ALJ Batisse again

14  found Plaintiff not disabled and denied benefits for a second time on August 30, 2005.  (Tr. 490-

15  513).  Plaintiff did not file exceptions and the Appeals Council did not assume jurisdiction of the

16  case, making the August 2005 decision the final decision in the case.  20 C.F.R. § 416.1484(d).

17  Plaintiff filed a complaint for judicial review with this Court on October 12, 2005.

18                              II.  THE PARTIES' POSITIONS

19          Plaintiff requests that the Court reverse the ALJ's finding that Plaintiff is not disabled and

20  order payment of benefits outright or remand for further proceedings.  Plaintiff argues that the

21  ALJ erroneously found Plaintiff not credible, improperly rejected medical opinion evidence and

22  lay testimony, made an inadequate severity finding as to several impairments, and erred in finding

23  Plaintiff not disabled by relying on the Medical-Vocational Guidelines ("the grids").

24          The Commissioner argues that the ALJ applied correct legal standards and cited

25
    REPORT AND RECOMMENDATION
26  PAGE - 2

1  substantial evidence, and his finding that Plaintiff is not disabled should therefore be affirmed.

2  ### III.  STANDARD OF REVIEW

3        The court may set aside the Commissioner's denial of social security disability benefits

4  when the ALJ's findings are based on legal error or not supported by substantial evidence in the

5  record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is

6  defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence

7  as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*,

8  881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving

9  conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

10  1039 (9th Cir. 1995).  Rather than affirming the Commissioner's decision by isolating a specific

11  quantum of supporting evidence, the Court must consider the record as a whole and weigh

12  evidence that supports and evidence that detracts from the Secretary's conclusion.  *Tackett v.*

13  *Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  Where the evidence is susceptible to more than one

14  rational interpretation, it is the Commissioner's conclusion which must be upheld.  *Sample v.*

15  *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

16  ### IV.  EVALUATING DISABILITY

17        The claimant bears the burden of proving that he is disabled.  *Meanel v. Apfel*, 172 F.3d

18  1111, 1113 (9th Cir. 1999).  Disability is defined as the inability to engage in any substantial

19  gainful activity by reason of any medically determinable physical or mental impairment, which

20  can be expected to result in death, or which has lasted or can be expected to last for a continuous

21  period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).

22        The Social Security regulations set out a five-step sequential evaluation process for

23  determining whether claimant is disabled within the meaning of the Social Security Act.  *See* 20

24  C.F.R. § 416.920.  At step one, the claimant must establish that he or she is not engaging in any

25

26  REPORT AND RECOMMENDATION
PAGE - 3

substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  At step two, the claimant

must establish that he or she has one or more medically severe impairments or combination of

impairments.  If the claimant does not have a "severe" impairment, he or she is not disabled.  *Id.*

at § ©).  At step three, the Commissioner will determine whether the claimant's impairment

meets or equals any of the listed impairments described in the regulations.  A claimant who meets

one of the listings is disabled.  *See Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments

listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity

and the physical and mental demands of the claimant's past relevant work.  *Id.* at § (e).  If the

claimant is not able to perform his or her past relevant work, the burden shifts to the

Commissioner at step five to show that the claimant can perform some other work that exists in

significant numbers in the national economy, taking into consideration the claimant's residual

functional capacity, age, education, and work experience.  *Id.* at § (f); *Tackett,* 180 F.3d at 1100.

If the Commissioner finds the claimant is unable to perform other work, then the claimant is

disabled.

## V.  SUMMARY OF THE RECORD EVIDENCE

Because the parties have adequately summarized the record in their briefing, and because

much of the record evidence is not relevant given the scope of the issues, the Court will not

summarize the record here.  Relevant evidence will be referenced in the discussion as necessary.

Born February 26, 1957 (Tr. 60), Plaintiff was 43 years old when he filed his SSI

application and 48 years old when the ALJ issued his August 2005 decision.  Plaintiff is a high

school graduate with past relevant work as a hardwood floor finisher.  (Tr. 448, 1067).

## VI.  THE ALJ'S DECISION

At step one, the ALJ found the Plaintiff was not engaged in substantial gainful activity

REPORT AND RECOMMENDATION
PAGE - 4

1  (Tr. 494, 512, Finding no. 1).  At step two, the ALJ found Plaintiff's liver-disease-related edema,

2  seizure disorder, asthma, and depression were severe impairments.  (Tr. 506, 512, Finding no. 2).

3  The ALJ did not find that Plaintiff's restless leg syndrome, sleep apnea, limb movement during

4  sleep, or anxiety were severe.  At step three, the ALJ found that Plaintiff's impairments did not

5  meet or equal a listed impairment.  (Tr. 506, 512, Finding no. 3).  The ALJ determined that

6  Plaintiff's RFC allowed him to perform light, unskilled work without frequent interaction with

7  the public.  (Tr. 510, Findings 5 and 10).  At step four, the ALJ determined that Plaintiff could

8  not perform his past relevant work as a floor refinisher.  (Tr. 510, 512, Finding no. 6).  At step

9  five, the ALJ found Plaintiff not disabled by using the grids, Rule 202.20 or 202.21.  (Tr. 511,

10  Finding 11).

11  VII.  DISCUSSION

12  A.    Plaintiff's Credibility

13       Plaintiff argues that in assessing his credibility the ALJ failed to state specific, clear and

14  convincing reasons for rejecting Plaintiff's testimony.  The Commissioner responds that the

15  ALJ's assessment must be upheld as a rational interpretation of the evidence.

16       The ALJ's reasons for rejecting a claimant's testimony must be clear and convincing, and

17  supported by specific findings stating which testimony is not credible and what evidence suggests

18  that conclusion; general findings are insufficient.  *Smolen v. Chater*, 80 F.3d 1273, 1282-84 (9th

19  Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  In this case, the ALJ

20  articulated several reasons for finding Plaintiff not credible, but careful review of the record

21  reveals that these reasons do not provide a "convincing" basis for the ALJ's finding.

22       First, the ALJ found Plaintiff inconsistent because he claimed to need twelve or more

23  hours of sleep each day but also reported difficulty sleeping.  (Tr. 507).  However, Plaintiff's

24  claim that he requires excessive sleep does not exclude the possibility that he also has also

25

26  REPORT AND RECOMMENDATION
   PAGE - 5

difficulty sleeping.  Although Plaintiff experienced trouble sleeping due to anxiety (Tr. 382) and violent body-jerking (Tr. 380), his chronic fatigue and need for sleep are well-documented in the record (Tr. 116-18, 129, 457, 470, 590, 604, 624, 628, 630, 918, 949, 981, 1053-54, 1057).

Second, the record does not support the medical non-compliance which the ALJ found undermined Plaintiff's credibility.  *See* 20 C.F.R. § 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Instead, the record supports Plaintiff's argument that he engaged with his treatment providers and tried to follow their directions.  (Tr. 725, 863, 922, 949, 951, 1018, 717, 876-79, 956, 910, 913-14).  It is true that Plaintiff did not take anti-depressants for 6 months, but according to his treatment provider this was due to its side effects, and Plaintiff tried other drugs which he found helpful.  (Tr. 371).  Plaintiff also did not take Serzone for fear of side effects, but later agreed to try it after discussing it with his doctor.  (Tr. 405).

Third, the ALJ found that Plaintiff's activities conflicted with his claims of fatigue and swelling in his hands, feet, and abdomen (Tr. 507, 449-50, 473), and that medications Plaintiff was taking alleviated his anxiety and asthma (Tr. 462, 466).  The Commissioner argues this enabled him to drive to the methadone clinic, do chores, put together model cars, play guitar, and shop.  (Tr. 451-52, 457-58, 857, 860, 865).  However, medical records and corroborating testimony from Plaintiff, his mother, and his sister-in-law support Plaintiff's argument that his symptoms were helped, but not alleviated, by treatment.  (Tr. 90, 111-13, 118, 146, 175, 121-22, 138-39, 420-52, 453-54, 464, 466-67, 473, 817, 953-56).  The record also shows that the Plaintiff only did activities intermittently and he quit driving because he tired easily, lacked coordination and focus, and was averse to being around people.  (Tr. 96-97, 125-36, 455, 1056, 150, 451-52, 457-58, 1046-47, 1049, 1052-54, 1056-58).  Moreover, Plaintiff need not be "utterly incapacitated" in order to be disabled.  *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 925 n.2 (9th Cir. 2002).

REPORT AND RECOMMENDATION
PAGE - 6

Finally, the ALJ concluded that Plaintiff is not as socially isolated as he claims. However, Plaintiff's claim that he is very socially isolated is supported by the record, which demonstrates that he has one friend, does not like people, and has little-to-no social contact with friends or family. (Tr. 66-69, 97, 123-26, 147-49, 461, 607, 928, 1058). Plaintiff's isolation is not negated by his attempt to attend one car show (Tr. 453), his audition for one band (Tr. 865), nor by his daily car-pooling to the methadone clinic with his only friend during the nearly five-year relevant period. The ALJ also stated multiple times in his opinion that Plaintiff played in a band, which the record does not reflect for the relevant period. (Tr. 509, 510, 461). Accordingly, I conclude that the ALJ's determination regarding Plaintiff's credibility was erroneous as it was not supported by substantial evidence.

B.   Lay Witness Evidence

Plaintiff claims that the ALJ did not provide adequate reasons for rejecting statements from his mother and sister-in-law. The Commissioner argues that the ALJ properly considered lay testimony from both individuals.

Descriptions from friends and relatives in a position to observe a claimant's symptoms and daily activities are routinely treated as competent evidence of a claimant's condition. *E.g., Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). An ALJ may discount descriptions from these persons by stating reasons germane to each witness. *Dodrill,* 12 F.3d at 919.

Rather than rejecting the lay-testimony in this case, the ALJ found that it did not indicate that Plaintiff is unable to perform light or sedentary work. (Tr. 510). Plaintiff's mother and sister-in-law described Plaintiff's impairments, symptoms, and activities in written statements and questionnaires. They also described Plaintiff building model cars and planes, reading, cooking, and doing chores, as well as his social isolation, poor grooming, edema, and asthma problems. (Tr. 98-103, 145-50, 175). The ALJ found these statements generally credible. (Tr. 510).

1   Therefore, I conclude that the ALJ did not err in evaluating lay witness testimony.

2   C.      Severity of Impairments

3          Plaintiff claims the ALJ erred in not finding that his restless leg syndrome, periodic limb

4   movement during sleep, anxiety, and possible sleep apnea are severe impairments.[1]  The

5   Commissioner argues that the record is conflicted as to the extent of Plaintiff's sleep apnea and

6   restless leg syndrome, and that despite finding Plaintiff's anxiety non-severe, the ALJ accounted

7   for it by limiting Plaintiff to work not requiring public interaction.  (Tr. 510, 512, Finding no. 5).

8          An impairment is severe if it creates more than a "minimal effect" on a claimant's ability

9   to do basic work activities.  SSR 96-3p; *Edlund*, 253 F.3d 1152, 1158 (9th 2001).  At step two,

10  Plaintiff must meet a de minimis screening requirement by making a threshold showing that his

11  medically determinable impairments significantly limit his ability to perform basic work activities.

12  *See Bowen v. Yuckert*, 482 U.S. 137, 145, 107 S.Ct. 2287 (1987).

13         Plaintiff has not made a threshold showing that restless leg syndrome, periodic limb

14  movement during sleep, anxiety, and possible sleep apnea significantly limit his ability to perform

15  basic work activities.  According to recitations of Plaintiff's medical history by Dr. Ahmad[2],

16  Plaintiff's primary physician from 2000 to 2003, Plaintiff has a history of these conditions.  (Tr.

17  788-95, 803-16, 974).  Nurse Parkman recommended further evaluation of Plaintiff's limb

18  movements and possible apnea.  (Tr. 371).  However, the record does not correlate Plaintiff's

19  chronic fatigue with his alleged sleep-disturbing conditions as strongly as Plaintiff argues.  (Tr.

20

21         [1]  The Court does not address Plaintiff's claim that the ALJ erroneously failed to find

22  Plaintiff's edema severe because the record reflects that the ALJ did find Plaintiff's edema to be a
    severe impairment.  (Tr. 506, 512, Finding no. 2).

23
           [2] In its Order dated September 16, 2004, this Court instructed the ALJ to contact Dr.
24  Ahmad on remand for clarification of the doctor's opinion (Tr. 514).  However, the ALJ was
    unable to comply because Dr. Ahmad is apparently in prison for Medicaid fraud. (Tr. 508).
25

26  REPORT AND RECOMMENDATION
    PAGE - 8

66-69, 104-108, 16-18, 129, 135, 451, 457, 470, 590, 604, 630, 1053, 1057).  The record instead implies that Plaintiff's fatigue is linked to his liver problems (Tr. 624, 628) and prescription drug side effects (Tr. 949, 981).  Plaintiff's treatment providers have not yet concluded that he has sleep apnea, and the portions of the record cited by Plaintiff do not discuss his alleged anxiety.  The ALJ's conclusion that these impairments are not severe was therefore supported by substantial evidence and was not in error.

D.    Medical Evidence

Plaintiff claims the ALJ improperly rejected medical evidence pertaining to Plaintiff's impairments and the functional limitations they caused.  (Tr. 506).  Plaintiff argues that the ALJ erred in rejecting the opinions of treating neurologist Dr. Holmes; treating physician Dr. Byrne; treating neuropsychologist Dr. Drane; examining DDS consultants; consulting psychologists Dr. Gustavson and Dr. Johnston; treating counselors from Community Psychiatric Clinic; medical consultants Dr. Eisenhauer, Ph.D., and Dr. Peterson; and consulting therapist Ms. Collins.  The Commissioner responds that the ALJ properly evaluated these opinions in carrying out his responsibility to determine credibility and resolve ambiguities and conflicts in the medical evidence.  *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

A claimant's treating physicians's opinions are afforded the most weight, and if uncontradicted, may only be rejected for clear and convincing reasons supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  The ALJ may satisfy this burden by summarizing conflicting evidence, interpreting it, and making findings.  *Morgan*, 169 F.3d 595, 600 (9th Cir. 1999); *see also Magallanes*, 881 F.2d at 750.  An ALJ may reject treating physicians' opinions that are unsupported by objective medical findings or the record as a whole*, Batson*, 359 F.3d at 1195, or premised on a claimant's discredited subjective complaints.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

REPORT AND RECOMMENDATION
PAGE - 9

Here, The ALJ stated clear and convincing reasons supported by substantial evidence for rejecting several of Plaintiff's treating and examining physicians' opinions.  In addition, the ALJ cited other opinions and evidence that supported his conclusion that Plaintiff was not precluded from light and sedentary work, as detailed below.

       1.     Physical Impairments

Plaintiff argues the ALJ erred in rejecting the opinions of Dr. Holmes and Dr. Byrne and for rejecting a DDS assessment.  The Commissioner argues that the ALJ stated clear and convincing reasons for rejecting the opinions of Dr. Holmes and Dr. Byrne, and need not have addressed the environmental limitations opined by these doctors and by the DDS assessment.

The record supports the Commissioner's arguments.  Dr. Holmes has treated Plaintiff for epilepsy since 2003.  (Tr. 986).  In a questionnaire, Dr. Holmes indicated that Plaintiff should avoid unprotected heights and moving machinery, and that he should not drive.  (Tr. 988-90).  Dr. Holmes further indicated that Plaintiff should not be exposed to marked temperature changes or humidity, dusts, fumes, gases, or stress, or Plaintiff's seizure disorder might be affected.  (Tr. 988-90).  The ALJ rejected some of Dr. Holmes' findings because they were repeatedly stated in terms of what the Plaintiff had reported.  (Tr. 509).  For example, Dr. Holmes stated that *Plaintiff reported* he could not use his hands for repetitive activities because his coordination was off.  (Tr. 509, 989).  The ALJ also found that limitation inconsistent with Plaintiff's ability to make models and play the guitar.  (Tr. 509).  The ALJ rejected Dr. Holmes' finding that Plaintiff could not lift "anything" because it lacked basis and contradicted Dr. Byrne's statement that Plaintiff could lift up to 25 pounds.  *Id*.

In March of 2005, Dr. Byrne indicated that chronic edema prevented Plaintiff from using his hands for fine manipulation (Tr. 983).  The ALJ rejected this opinion based on Plaintiff's ability to play guitar and build models.  (Tr. 508-09).  Dr. Byrne also opined that Plaintiff could

REPORT AND RECOMMENDATION
PAGE - 10

sit up to 24 hours continuously but for only four hours during an eight-hour work day (Tr. 982), which the ALJ rationally concluded was inconsistent (Tr. 508). Moreover, the ALJ pointed out that Dr. Byrne's findings that Plaintiff could sit up to four hours, stand up to four hours, and walk up to two hours in an eight-hour work day did not suggest that Plaintiff was precluded from working an eight-hour day. *Id.*

The ALJ stated clear and convincing reasons for rejecting Dr. Holmes' findings as to Plaintiff's coordination and lifting ability, and for rejecting Dr. Byrne's findings as to Plaintiff's abilities to sustain fine manipulation and to sit, stand, and walk during a work day. The ALJ did not need to address the environmental limitations opined by Dr. Holmes, and supported by findings from Dr. Byrne (Tr. 984) and a DDS assessment[3] because environmental limitations do not preclude Plaintiff from performing a wide range of light or sedentary work. SSR 85-15.

2.      Mental Impairments

Plaintiff claims the ALJ failed to provide valid reasons for rejecting the opinions of Plaintiff's mental health care providers. Plaintiff argues that these care providers' opinions support a finding that Plaintiff met or equaled mental health listings 12.04 and 12.06, found in 20 C.F.R. pt. 404, Subpt. P, App.1. Plaintiff specifically argues that the ALJ improperly rejected the Global Assessment of Functioning ("GAF") scores assigned by Dr. Gustavson, Dr. Johnston, and treatment providers at the Community Psychiatric Clinic (CPC), and improperly rejected opinions on Plaintiff's functional limitations from Dr. Drane, Dr. Byrne, Ms. Collins, Dr. Eisenhauer, and Dr. Peterson. The Commissioner responds that the ALJ properly evaluated medical opinions and cited substantial evidence supporting his conclusion.

The ALJ concluded that Plaintiff's depression precluded frequent public interaction but

---

[3] Despite the findings of Plaintiff's environmental limitations, DDS medical consultants also concluded that Plaintiff was able to perform sedentary work activity. (Tr. 334-39, 838-41).

REPORT AND RECOMMENDATION
PAGE - 11

1    not all unskilled work.  (Tr. 510).  In evaluating the medical evidence and opinions, the ALJ

2    weighed conflicting medical opinions to reach his conclusion, which is supported by substantial

3    evidence in the record.  (Tr. 495-510).

4        Regarding Plaintiff's GAF scores, the ALJ did not and need not have addressed them

5    separately from the treatment providers who assigned because GAF scores are not directly

6    correlated with disability listings.  *See* 65 Fed. Reg. 50764–50765 (Aug. 21, 2000); *Vincent ex*

7    *rel. v. Heckler*, 739 F.2d 1393, 1934-95 (9th Cir. 1984).  In addition, the findings of doctors

8    who assigned Plaintiff GAF scores do not demonstrate Plaintiff's mental impairments as clearly

9    he argues.  The record supports the Commissioner's interpretation of evidentiary conflict.  For

10   example, Dr. Gustavson diagnosed Plaintiff with adjustment disorder and assigned him a GAF of

11   45 to 50, but the doctor also found that Plaintiff was coherent; his memory, attention, and

12   concentration tested well; and that his complaints were primarily physical, not mental.  (Tr. 216).

13   Likewise, Dr. Johnston found Plaintiff anxious and depressed, but also found that Plaintiff's

14   ability to persist in difficult situations and sustain concentration depends on his level of interest in

15   the situation.  (Tr. 747).  Similarly, Dr. Drane opined that Plaintiff had mild neurocognitive

16   dysfunction, significant depression, social anxiety, strong somatizational tendencies, and ongoing

17   psychiatric issues that would hinder his functioning in all life areas.  (Tr. 885-86).  However, Dr.

18   Drane did not say that Plaintiff was precluded from working and indicated that Plaintiff could

19   manage his own finances and self-care and the cognitive demands of most jobs.  *Id.*

20       The record also shows that the opinions of Community Treatment Providers (CTP) and

21   Plaintiff's therapist Ms. Collins conflicted with the opinions of Dr. Johnston, Dr. Eisenhauer, and

22   Dr. Peterson.  Plaintiff's treatment team from CPT gave a dismal assessment of Plaintiff's

23   abilities, indicating that he has marked difficulties with daily living, social functioning, performing

24   tasks, and concentrating.  (Tr. 422-25, 737-43, 976-79).  Ms. Collins similarly indicated that

25   
26   REPORT AND RECOMMENDATION
     PAGE - 12

Plaintiff has marked restriction in activities of daily living; extreme difficulties in social functioning; extreme deficiencies in persistence, pace, and concentration; and that his impairments were not conducive to work. (Tr. 1023-25). However, the ALJ rejected Ms. Collins' opinion because it was based on Plaintiff's physical limitations which Ms. Collins was not qualified to assess, and because the ALJ did not find her to be an acceptable medical source. (Tr. 509); *see* 20 C.F.R. § 404.1513.

In contrast to the assessments offered by CTP and Ms. Collins, medical consultant Dr. Eisenhauer, Ph.D., indicated that Plaintiff was "moderately" limited in some facets of sustained concentration and persistence, social interaction, and adaptation (Tr. 315-17), and Dr. Peterson found Plaintiff to be only "moderately" limited in social interaction (Tr. 751). Dr. Eisenhauer found Plaintiff cognitively intact, but indicated that Plaintiff should not work closely with the public due to depression and social restrictions. (Tr. 315-17). Dr. Peterson reiterated the conclusion that Plaintiff would work best with minimal public or supervisory contact. (Tr. 751). Neither doctor found Plaintiff "markedly" limited in any area. (Tr. 315-17, 748-51). The ALJ also found that Plaintiff's activities and reports of improvement on medications demonstrate that he could perform light, unskilled work. (Tr. 510, 746, 711, 857, 848, 999).

The medical opinions interpreted and relied upon by the ALJ comprise substantial evidence in support of his conclusion that despite Plaintiff's limitations, his mental impairments do not preclude him from working. Therefore, I conclude that the ALJ properly evaluated the medical opinion evidence.

E.      Use of the Guidelines

Plaintiff argues that the ALJ omitted significant non-exertional and exertional limitations from his RFC finding and should not have relied on the grids to find Plaintiff not disabled. 20 C.F.R. pt. 404, Subpt. P, App. 2. The Commissioner responds that the ALJ properly relied on

REPORT AND RECOMMENDATION
PAGE - 13

1   the grids because they accounted for Plaintiff's only non-exertional limitation of no frequent

2   interaction with the public.

3        The ALJ bears the burden at step five to show there are jobs in significant numbers

4   existing in the national economy that Plaintiff can perform given his RFC.  20 C.F.R. §

5   416.960(c)(2).  The ALJ can meet this burden by using testimony of a VE or by reference to the

6   grids.  The grids can only be used for exertional limitations, *Holohan v. Massanari*, 246 F.3d

7   1195, 1208-09 (9th Cir. 2001), and must completely and accurately represent a claimant's

8   limitations.  *E.g., Tackett,* 180 F.3d at 1101.  When a claimant has non-exertional impairments

9   severe enough to limit his functional capacity in ways not contemplated by the grids, the ALJ

10  may not rely on the grids, but must consult a VE.  *E.g., Osenbrock v. Apfel*, 240 F.3d 1157,

11  1162-63; *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000); *Tackett*, 180 F.3d at 1101-02.

12       In this case, the ALJ posed two hypothetical claimant scenarios for the VE to assess.  In

13  the first, the ALJ asked the VE to take into account all of the impairments Plaintiff had testified

14  to, assuming that Plaintiff's testimony was credible.  Based on Plaintiff's limitations, including his

15  testimony that he was unable to perform any work longer than 20-30 minutes without needing to

16  rest (Tr. 1052-53), the VE concluded that Plaintiff could not sustain work at any job for an

17  eight-hour work day (Tr. 1068).  In the second hypothetical, the ALJ asked the VE to assume

18  that Plaintiff's need for rest every 20-30 minutes was accommodated or did not exist.  (Tr.

19  1069).  Working under this assumption, the VE concluded that Plaintiff could perform several

20  light jobs, such as furniture finishing or production assembly.  (Tr. 1070).

21       The ALJ ultimately relied only on the grids.  The ALJ reasoned that he need not rely on

22  the VE because the VE's conclusions were based on the Plaintiff being credible.  (Tr. 511).

23  However, as discussed *supra* at subsection A, the ALJ's finding that Plaintiff was not credible

24  was in error as it was not supported by substantial evidence.  The ALJ did not address why

25

26  REPORT AND RECOMMENDATION
    PAGE - 14

Plaintiff's testimony that his poor stamina allowed him only to work in 20-30 minute increments was not credible, and the ALJ's credibility-based dismissal of Plaintiff's other non-exertional limitations (e.g., inability to perform fine manipulation, environmental restrictions due to asthma and epilepsy) was inadequate for the reasons discussed in subsection A.  Because the ALJ found Plaintiff to be not credible, the ALJ did not incorporate Plaintiff's inability to work longer than 20-30 minutes into his RFC.  This led the ALJ to erroneously rely on the grids, which  also did not take into account Plaintiff's inability to work longer than 20-30 minutes.

Plaintiff's testimony regarding his need for rest every 20-30 minutes should be credited as true because there is no evidence contradicting this testimony and the ALJ's credibility finding was erroneous.  *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003); *Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003).  It is clear from the record that if Plaintiff's testimony is credited, a finding of disability at step five is required, *Smolen*, 80 F.3d at 1292, and further proceedings would not serve a useful purpose, *Harman v. Apfel*, 211 F.3d 1172, 1177-78 (9th Cir. 2000).

## VIII.  CONCLUSION

The Commissioner's determination to deny Plaintiff benefits is not free of legal error and is not supported by substantial evidence.  Based on the record evidence, the undersigned recommends that the Commissioner's decision be REVERSED and REMANDED for payment of benefits.

DATED this 10th day of July, 2006.

_____
MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 15